Good morning, Your Honors. Good morning. I represent the minor in this case, A. S. And basically from our perspective, where we're at now is a matter of justice, substantial justice. And I'd like to kind of go through the three points. I don't want to be redundant in my arguments because I feel like we've briefed very thoroughly the two venues. But the first issue, I think the underlying issue, is the prevailing party issue. And Is that an issue as to the OAH? Could you call it OAH in California, by the way? OAH fees? Yes, Your Honor. And but it carries through Okay. Well, let me ask a question because let's assume you were the prevailing party as the ALJ found. And we call it OAH. So if I call it We call it OAH in Arizona for the Office of Administrative Hearings. So let's assume that you prevailed in the OAH proceedings. Why wasn't your attorney's fee application under the OAH proceedings barred by the statute of limitations for the OAH proceedings? Whichever statute the judge chooses, whether it's the shorter one or the longer one, you agree that your application wasn't filed within that time period? Yes, Your Honor. Okay. How were you stopped from filing or prevented from filing that application during that time period? Well, the theory that we presented and we still maintain is excusable neglect. And the fact that from our perspective, we had what would be tandemant to a verbal contract with the CDE. Well, here's my problem. I read that. And here's my problem with that. That verbal contract as I read it doesn't appear to have occurred until after the statute of limitations expired with respect to the OAH claim. Am I wrong on that? I think so, Your Honor, because we had ongoing discussions. Well, but the here's what's just worked backwards. The court of appeals finds or the court below finds that the OAH decision triggers your entitlement to attorney's fees, right? Yes, Your Honor. And you don't disagree with that?  No. And that's in October 31st of 2007? Correct. And you don't file for attorney's fees until July 28th of 2009, right? Yes, Your Honor. And when is – so tell me when this alleged verbal agreement arose? Well, Your Honor, it's not a simple answer, so – Tell me the earliest date it arose. Well, when the decision was made and the county decided to appeal it is when CDE finally entered into any kind of serious discussion. They refused to participate. Even though they were a named party, they made a motion for dismissal that was denied. They didn't even come to the due process hearing. And so once the OCDE was ruled the responsible party and made it known that they were going to appeal, that's when CDE stepped in. Okay. So when was that? That was within the 90 days. I'm looking now at three years from October 31st of 2007. So tell me – see, in order – it seems to me in order for you to prevail on an equitable estoppel theory, something has to occur within the statute of limitations that prevented you from filing your claim within that statute. We agree on that. Yes, Your Honor. So tell me when that occurred within that three-year statute. Well, again, I have to recreate the environment we were in. Well, I accept all your arguments about how you may have been misled and stuff. Tell me when anybody on the opposing side did anything to say to you, if you don't file an application for fees, you don't need to. But that's what I'm trying to get at, Your Honor. It wasn't that type of conversation specifically with the language that you just used. It was this idea that this was a problem, this was a hole in the statutes. Once we had a ruling, then the attorneys or the party – the attorneys for the parties involved got together and sat down and started talking. And the fees was not viewed as a big issue back then. Was it discussed? I – well, it was – fees are always discussed, Your Honor. They're always discussed. And my short answer is, yes, of course it was discussed. Is that in the record? I don't know that it's in the record other than my contentions that this was an ongoing discussion with all parties, and it was – initially it wasn't a matter of a late filing or not a late filing. It was we need to sort this out. CDE or OCDE at the time was working very collaborative with me, invited me, and I provided emails that showed that. And the emails that were presented is only representative of the many, many verbal discussions that took place. And so that's the snapshot that I would like the Court to look at, is the context that all this came down, and that's where this idea of not bothering with the fees because we had bigger things to settle, and this was a real problem in Orange County at the time. Let's focus on the August 10, 2009 email, okay? Okay. It seems to me that's your best hope to sustain an equitable estoppel argument. As I understand the chronology, we're in – in July of 2009, we're in – you were in the district court at that point, and the district court has just entered judgment against CDE? No. July was when the OAH decision first came out, and then the appeal was filed. Well, 2009 I'm talking about. So we're within the statute of limitations. Oh, yes. In 2009, we were in court, yes. We're within the three-year statute of limitations. July of 2009 – just tell me if I got the facts straight. You send a letter to CDE, I think, saying, hey, you've now lost. I'm the prevailing party. Give me my fees or – and if I don't hear a response by August 15, I'm going to file a lawsuit or a claim for fees. They send you an e-mail on August 10 that says basically, as I read it – and I think what you were trying to say is, look, we don't want to run up more fees unnecessarily, right? So just let me know, are you going to pay these fees or not, or do I have to file this lawsuit? And they say – this is in the context of you negotiating over whether they were going to withdraw their objection to your attempt to amend the judgment, and they wanted you to stipulate a stay of the judgment, I think, while they appealed. And they say to you, as I read it, don't worry about that. If we're ultimately found responsible, we will negotiate with anyone who's got a legitimate claim for fees. I assume that you must have relied upon that e-mail in not filing the lawsuit you had threatened? I did not rely solely on the e-mail, and that's where I think CDE has got it wrong, because before and after that e-mail, discussions took place. And one of the things about the letters that were issued, because there was more than one demand letter, it was – But you keep making demands after that. Absolutely. But I was asked to, so that there was a paper trail and a recommendation – or excuse me, not a recommendation – a writing of the demand and where the fees were at the time. Is that in the record? The fact that they were requested?  No, because it's a verbal thing, Your Honor. And what is frustrating – Well, but I'm looking at this from the perspective of the district judge. And here's what the district judge says. He says, look, we have this thing in August, this exchange in August, and you obviously aren't relying on it because you keep filing demands for fees. And therefore, I'm not going to invoke equitable estoppel. And your argument is, well, the reason I filed the demands for fees is that I was asked to, and I'm – that's not in the record, is it? Not in that way. Well, wait. I actually don't – Perhaps. I don't know why we're talking about demands as though there are five or six. I only see one other demand, and that's in December of 2011, after our court finally put to rest CDE's attempts to get out of this judgment. And then you say, okay, now you really have lost. Give me my fees or I'm going to sue. And again, it was based on, okay, send me another letter because obviously the fees are going to be more. But keep in mind that during this process, I think we are currently on our fourth CDE attorney. And so some discussions were early on with the original attorney that was much more collaborative with the group of attorneys down in Orange County. And then it changed, and then the current CDE attorney was not privy to any of those discussions, any of those emails. And my big question in this is, if what they're – if they're contending that I was not led to believe what I felt I was led to believe, where are their affidavits from these other gentlemen stating, no, Ms. Lawyer is misrepresenting our conversation? The answer is there are none. Well, but my – that's why I'm asking about the conversations. Are there – is there anything in the record by which you represented what occurred in these conversations? In my pleadings? In this record? I'm looking at it in front of the district court. Anywhere. In my pleadings and in my oral arguments. But nothing – Nothing in it. I mean, we look – I mean, how can I – how else can I – You could have submitted a declaration under oath saying, on this date I had this conversation, on this date I had that conversation with this person. Your Honor, I tried to reconstruct that. But, again, what I'm trying to get to in my oral arguments is the concept of that snapshot in time and the nature of having conversations in hallways at other meetings when you step out in the hallway to get a drink of water. You don't necessarily – you know, my time cards don't look like that. I'm a solo practitioner handling no less than 100 cases at that time out of that court. And so, based on where we were at that time with our relationships with the because I depended on the integrity of the people I was dealing with. And because the history is so important, I think it's really important for the court to understand when that panel started, it was a scorched earth kind of atmosphere. There was a lot of controversy that went from Orange County all the way up to Sacramento and back. And then the presiding judge at the time suggested that we try to be more collaborative because it was such a hostile environment for everybody. And it was costing the taxpayers a lot of money. I know you want to get to the district court fees, but before you do, as I understand the statutory scheme here, you're not – OAH can't award you fees. You have to ask for them in the district court, either as a claim or a counter claim. Even assuming that you were deterred from filing a fee application in the district court after the judgment was entered, wouldn't that have been too late? Wouldn't you have had to amend your pleadings to seek fees in OAH? The district court doesn't have power to order OAH fees unless it's – a complaint is brought to it seeking OAH fees. Am I correct on that? Well, I would agree with you, Your Honor, but I have to go back in my own defense that I'm not – I am not challenging the laws that are in effect or were in effect at the time. That's not my – that's why I said what I'm looking for today is substantial justice based on the fact that this – these cases, which were really brought to try and improve the stead of these children, these unrepresented children in the court system, so that they had representation, has completely chilled that advocacy. There is no panel. There is no one stepping up on a regular basis to help these children. And can you get a message from this Court now that, oh, even after you spend eight years representing a client that changed the law in this State, your money, your fees are not worth the taxpayers' money? There's something wrong with that, especially when you rely on the integrity of the bar that you're dealing with. Can I ask you to address, because I know your time is dwindling here, tell me why you were the prevailing – I understand why you were the prevailing party in the court proceedings. At least I understand your argument, and I want to hear from the other side on that. Tell me why – what you did in the district court proceedings to deserve fees. I submitted briefs in support of the situation. I collaborated with opposing counsel. OCDE counsel called me on a regular basis. When the ruling – when the final ruling came down from this Court and the district court, I was asked to file the appeal on the final resolution because we didn't like it. We thought it was illogical. And I said, I'm sorry. I've been working for free for eight years. I don't want to carry another case for another four or five years only to find out I'm going to be opposed when I do it. And so that's the part that really personally troubles me, besides legally troubles me. I relied on my colleagues to step up and say, yes, we spent this much time collaborating with this attorney to do what's right for these unrepresented children. And now I have – we're taking no position, and I know nothing. And I just don't think that's appropriate. But didn't the district court – the district court said in this case, I don't think you were the prevailing party because it was already established that somebody was going to have to cover the education of your client. No, it wasn't, Your Honor. Wasn't it? There was a settlement. It was not through court order. Wasn't there a settlement? That's the big misconception. Wasn't there a settlement agreement? There was a settlement agreement contingent. The funding would only stay in place until the court made a decision as to who was legally responsible. Right. So here we have – How is that not a – how is that not a material fact? Let me finish, and then I'll try to let you finish. Here we have the parties getting together and saying, one of us is responsible, but we're going to fight amongst ourselves about who. And so we'll agree to pay for this, but we're going to go to court and litigate which one of us is responsible. And they do. And somebody else then would – somebody else that was initially responsible later becomes responsible. How did your client prevail in that proceeding? Your Honor, they didn't do that. If that's what they did, there is an interagency dispute resolution process in the State of California that technically is mandatory, that they did not access. Instead, it was a term in that agreement. And keep in mind, we had nine litigants at the time. And so the agreement that we reached was total for some of them that we could rule out based on the statutes in place at the time. And then there was that group that we really couldn't sort it out because there were holes in the statute. And so in order to get that boy placed and get that funding in place, because he sat for seven months between the recommendation and the placement, we had to file. My client had to file to get the attention of nine agencies. In OLA. Including the State. You had to file in OLA. Pardon? You had to file your due process. By due process. And so then, okay, then when the due process came down and CDE finally appears because they knew that OCDE was going to appeal, then the State became, you know, actively involved. But keep in mind, a term of the mediated agreement was that my client joined the State. My client joined the State. So for them to now say, well, this is just between us, you need to leave the picture, that's not a fair assessment of what was really going on. I was the driver of that train. And I had all the passengers behind me. And then we finally get to the end and they're kicking me off the train. Okay. Your time has expired, but we will give you a couple minutes for rebuttal. Thank you, Your Honor. Thank you. We'll hear from the defendants. Can I just ask counsel for, I guess you were counsel for the Orange County? Are you planning to address the court? No, I'm not. Okay. Great. So we'll hear from you. One point I wanted to emphasize is with respect to the district court fees, Judge Sullivan did not actually go through the analysis of excusable neglect and equitable stop letting. No, he found that A.S. was not the prevailing party. Correct. But the point I'd like to make is simply that I believe if he had, the answer clearly would have been the same because it's the same facts that are being asserted by the appellant. The only two differences I could find in the analysis, if one were to go through  One would be that the August 10th e-mail from Mr. Herscher actually came after the 14 days for filing for district court fees had expired. The other is that in terms of the length of the delay, the length of the delay on the district court filing is actually longer than the length of the delay. Well, let me ask you about it. But as the district court fees, does the remand from this court start the clock over again? It does not. According to, for example, the Shalala case, the Luckt case, I mean, both of those cases are standing for the proposition that your responsibility is to file within the 14 days of the district court judgment to or ask the judge to extend that. But the judgment in this case gets vacated. It gets modified. Modified. And a new judgment gets entered. And with respect to that new judgment, was the request for fees timely? The request for fees. She requested fees before the new judgment. Actually, even before it was entered. Correct. But the only change on that judgment, in fact, was that there was a finding that CDE was responsible for a lesser amount of time than it had been in the district court. But in any event, what those cases stand for, Shalala and Luckt, is that that is not a reason for waiting to file, to wait until a case is heard on appeal and possibly change. Because of the reasons stated in those cases, the first judgment could be stayed on fees. The first judgment could simply be reversed and reimbursed on remand. Well, if we're focusing on district court fees for the moment, tell me why AS wasn't the prevailing party. Well, even assuming AS was the prevailing party at the OEH, which we dispute. Right. We'll get back to that in a second. Even assuming. If the theory is that they were a prevailing party because the goal was to establish that someone was responsible and the ALJ found that someone was responsible, the appellant did not – was not aggrieved by that decision and did not appeal that decision. The appellant did not join OCDE's appeal. The appellant was an unnecessary party, an unnecessary participant who took no position on the issue for appeal. Unnecessary, but can you have a – does this whole litigation depend on AS being a party? If AS just disappears from the case, does the case survive? Well, that's bringing in a new issue, Your Honor, which is at the district court level, CDE could have asserted – the Lake Washington case wasn't decided yet in the Ninth Circuit, but there were other authorities that stood for that same proposition already. The CDE could have asserted that OCDE could not bring a case in the district court against CDE. You're correct. So in other words, if this thing's – if we're going to get nailed down who really has to pay, AS has to stay. Well – Whether they had to stay or not, they were a party. They were sued. They were – Right? I don't think they were. Whether it was an appeal – They were a real party in interest. Yeah, party in interest. In the caption. Right. Okay. But anyway, to answer your question, they took no position. They filed no brief or summary judgment. And the – there was no change in status in any way from the idea that someone had been made responsible previously. Does the settlement agreement obligate somebody to pay for this? Well – Pending the court's determination of which entity? The – and I'll just say the settlement agreement was produced at least for our purposes for the first time on the supplemental briefing on the attorney's fees. So – but in any event, what it says, as I read it, is that local education agencies are funding that placement and sort of preserving their right that they may go after the state for correction. And the only issue on – the only – had you failed on appeal, had the local agencies failed on appeal, they would have had to have paid for the placement under the settlement agreement, would they not? They had already paid. That's right. That they would not get reimbursed. That's right. So the only fight was about who – in other words, from AS's standpoint at that point, after the settlement agreement, was AS assured that his placement – or I forget was – that the minor would be placed in Utah and receive education? Yes. And, in fact, was assured of that even prior to that. You know, a student is entitled to a free appropriate public education. The IEP team in July 6 of 2006 recommended residential placement. The juvenile court judge said that's okay with me. I'm going to release you to do that. Arrangements were made for transportation. Yeah. No, I just – put aside who prevailed in OAH for a second. I'm just – I just want to understand the party's legal rights vis-à-vis each other after the settlement agreement. And after the settlement agreement, was AS then assured that you go to Utah, somebody will pay. We still haven't figured out who yet. The local agencies will continue to pay until the federal court tells us that somebody else is responsible for paying. Is that a fair statement of the settlement? I would argue he was entitled to that before the settlement agreement. Right. I mean, as a matter of law. Certainly still was after that. As a matter of law. But the opposing parties, at least, in the OAH proceeding at that point said, as I read this, don't worry, we'll pay. We want to reserve the right to make the state reimburse us, but we'll place you in Utah, you'll get your education in an appropriate setting, but we're going to have some litigation about which among us is responsible. Is that? It became an issue of basically of a retroactive reimbursement among education agencies type case. Why don't we shift to the OAH fees and focus on that email. So let's say that I sort of played out when your opponent was up here my reading of how that email fit within the larger context. So why is my reading wrong? Well, when you look at those factors on equitable estoppel, the issue is, was anything said there which CDE intended for the impellent to rely on to. . . Yeah, because she's threatening a lawsuit. To not. . . Hang on, just let me play it out. It'll be easier if you respond to my thinking on this, because I just want you to steer me away if I'm going down the wrong path. I read her in July as saying, hey, you've now had judgment entered against you. I mean, there was actually a previous request where your client said, you know what, we're litigating this. Talking about fees is premature. So she said, okay, well, let's wait until the judgment's entered. Oh, now in July, you've now lost. The district court has entered judgment against you. Give me my fees or I'm going to sue by August 15th. August 10th, that email, I read as your client saying, no need to go there. We're not going to fight you on that. We just want our ability to challenge us on appeal, but we're telling you, and it says pretty explicitly, if we're ultimately found responsible, we will negotiate with anyone who's got a claim to fees. Now, it's not a commitment to pay the specific demand she's made, but in terms of the requirement that you file a lawsuit to get the fees, why don't we read that email as your client saying, you're not going to need to file a lawsuit. We'll just negotiate between ourselves to figure out the amount. Well, I mean, a couple things. First of all, as I mentioned, the ‑‑ I'm sorry. I'm confused with the two. Going back to the OAH. Just focus on the OAH. Right. Why doesn't that email say, don't worry, don't file for your OAH fees. We'll talk about it later. Well, because that is all it's saying is that it's expressing a willingness at some point, potentially at some point in the future, to potentially talk about this issue if the ‑‑ No, no, no. It's not saying that. It says if we are ultimately found responsible, we will negotiate for the fees. Don't worry about your entitlement. Now, we might have a fight over the amount, but in terms of your entitlement to the fees, we're not going to contest that. There's nothing inconsistent with saying that you have a willingness to negotiate with the fact that you would assert a affirmative defense that a claim wasn't filed to preserve the court's ‑‑ But she's threatening to file a lawsuit, and your response is basically, that ain't necessary. We'll negotiate this amongst ourselves. No need to run up the fees at taxpayer expense filing all these crazy motions. It's not promising to pay any particular amount. It's not promising anything in relation to that demand. But let's ‑‑ that was my water, my ice going down. It wasn't me burping. But let me ‑‑ back up. We're right at that point in time when the e‑mail goes out. What if your opponent says, I don't trust you. I'm filing a request for fees for the OAH proceedings. Would that have been timely at that point? For the OAH, yes. Yes. It would have. Well, that's a question that actually probably may need to be decided today. So if the two‑year statute applies, it's not, right? Well, for the OAH, I think we're looking at the 90 days versus the three years. Right. So if the 90 ‑‑ I'm sorry. If the 90‑day statute applies, it's not timely. Right. The district judge said, I don't have to resolve that because I find it untimely under either because I don't find equitable estoppel or excusable neglect. Well, with respect to the OAH, he did choose the three‑year statute. Right. He didn't have to because it would be untimely for OAH under either one. And at this point, it's a question of first impression. But you don't argue that the 90‑day ‑‑ you don't argue and appeal that the 90‑day statute applies? We're not disputing that portion of Judge Sullivan's ruling. Okay. And there's ‑‑ So then if she had filed a request for fees at that point, would it have been timely? See, here's why I asked the question. I don't want to hide the ball on this. As I read the law on this, it says you've got to file a court proceeding seeking OAH fees, a claim. You just can't ‑‑ it's got to be a counterclaim or a claim filed in court. Would a request for attorney's fees occurred in the OAH proceedings filed, you know, at the end of the district court proceedings be a sufficient way to seek it in your view? Well, it's ‑‑ the cases say it's supposed to be filed either as your own claim. Or as a counterclaim. Or as a counterclaim. So I'm trying to think of the status of the case at that point. So could she have filed a separate case for fees at that point? You could file a separate case and have it joined, I suppose. Yeah. It would have been within the statute of limitations if the three‑year statute applies. That's correct. Okay. So what ‑‑ so now get back to Judge Watford's question. Why didn't ‑‑ why shouldn't the judge have held below that that letter led your opponent not to make a timely claim for OAH fees? Well, I would argue, Your Honor, that this goes back to the standard of review, which is an abuse of discretion standard of review. Judge Selma was the person who wrote her over this case for many years. He referred to, on several occasions of having looked at the entire record, the multiple emails that were sent, the multiple demands that were sent, including the fact that OCDE even warned the appellant at one point that you haven't made a claim for this. And Judge Selma determined in balancing all the factors that neither the excusable neglect or the equitable stop will apply. Did not find that it would have been reasonable under the circumstances. I read the decision. Yes. But I'm saying I have a serious question as to whether it's correct in terms of it spends about three sentences on this email that I didn't find terribly persuasive. And I guess maybe you can supplement your defense of why you think that email should be read differently from the way that I read it. I think for the reasons that the judge said, that the appellant is showing an awareness of the need to file for fees, ability to file for fees, is in control of the decision to file for fees, and makes an intentional decision not to do so. Based on an assurance from her opponent that it's not going to be necessary. And she relies greatly now to her detriment in doing that. And what the judge says is that's not an assurance that you don't need to file for fees in a timely way to preserve the court's jurisdiction. That's saying we're not going to talk to you now about it. At some point in the future, we'll talk to you about it. So you read it as saying, look, withdraw your opposition to the judgment. If you want to go ahead and file for fees, file with them, and we'll negotiate later with you if we lose. It doesn't specifically address, it never specifically addresses the issue of filing. What happens after? What does the record tell us happened after the email? As I read it, several things happen. One is the judge actually enters the judgment. And makes a finding that A.S. is not the prevailing party. Right? In the district court. It's already been entered. Yeah. But the judge has entered a judgment that says A.S. is not the prevailing party. It never specifically says that. I mean, it rejects the addition of language that would have made it. Right. That's right. It rejects the motion to amend. There's a motion to amend pending that says to make A.S. the prevailing party. And the judge denies that motion. In conjunction with this August 10th email, your client withdraws its opposition to her request to amend the judgment, right? Correct. Because you extracted from her a concession that she wouldn't contest your request for a stay of the judgment pending the Ninth Circuit attack. Okay. So all of that together, again, just strikes me as a clear indication from her standpoint, and even to the extent we can read into your client's mind, the notion that, okay, we're basically going to accept that you're entitled to fees. We're going to have an issue, probably, as to the amount, but we'll negotiate that later. But in terms of your entitlement to fees, you're not going to need to file a lawsuit to establish that because we're basically telling you if we are ultimately found responsible after we go up to the Ninth Circuit and if we strike out there, we'll come back to you and we'll figure out the amount that we need to pay. And what do we do with the subsequent letter? To add that to this, what does the subsequent letter say? The subsequent letter was another demand letter. When was it sent? I'm sorry? When was it sent? I want to say January of 2012, approximately. It was after the Ninth Circuit had ruled, right? After our court had ruled. Right, right. So then that's what I mean. So you had said to her back in August of 2009, if we're ultimately found responsible, meaning after the appeal is done, then we'll talk. So she says, oh, well, now you have ultimately been found responsible. Let's talk. Here's my demand again. And again, she says, if you don't respond favorably, I'm going to have to file a lawsuit. So that's the only other demand I see. So when the district court seems to suggest that there were these multiple demands and therefore she couldn't possibly have relied on the August 2009 email, that's not, the record doesn't support that. There was an earlier demand in 2008. Right. No, and that's when your client said, this is all premature because we're actually testing this in the district court. And so she says, okay. But again, we're well within the statute of limitations there. So that doesn't help. But the only thing that happens after, in response to Judge Hurwitz's question, the only thing that happens after August of 2009, as I see the record, is after the Ninth Circuit appeal concludes sometime in late 2011, early 2012, she then comes back, but that there's nothing in the middle because you've told her, hey, just wait for the appeal to be resolved. And if we lose, we'll negotiate at that point. I would agree with the judge's exercise of his discretion on that, that that was not in any sense a promise to settle in any amount. It was an indication of a willingness to talk in the future, which is not inconsistent with the idea that you would assert an affirmative defense of a statute of limitations. Let me ask a question that neither party addresses. The settlement agreement has a $10,000 payment of attorney's fees to your opponent. Right. For OAH, for services rendered during the OAH proceeding. I take it no one is contending here that the OAH claim for fees was settled? That the OAH claim for fees was settled. In other words, there's a settlement agreement reached at some point in the OAH proceedings which says we all settle, we'll all do the following things, and we'll pay $10,000 in fees to A.S.'s counsel. Nobody is arguing in this that that's a settlement of A.S.'s entitlement to fees in the OAH proceedings. I see what you're saying. I don't see that argument. I just want to make sure you're not making. I think the two issues were separated. In reading through the settlement agreement, there was an understanding that for a couple-year period up until July of 06, the critical time in this case, that there were allegations that the student had actually been denied a free appropriate public education, different placements by different districts. Right. And so for that, as I read the agreement, nobody makes a big deal of it, so I'm just trying to figure this out. As I read the agreement, they're saying, look, we probably were bad during a period of these proceedings, and you performed a service and we had to pay you for it, $10,000. And now we have an agreement that everything is fine from now on and we'll just fight amongst each other about who pays for it. And so, but you're not asserting that you've, in effect, paid the prevailing party's fees in the OIP proceeding by paying that $10,000. No, and we were not a party to that agreement either. Okay. Okay. Your time, you're well over your time. Thank you, counsel, for your argument. We'll give counsel for AS two minutes for rebuttal. Your Honor, I would like to clarify that last question. Well, if he's not arguing it, don't worry about it. Okay. Thank you. I just would like to state that the arguments that are being made now by, I believe, the fourth CDE counsel, it's like, well, it's easy to use 20-20 hindsight and accuse opposing counsel to not having met certain deadlines. But, again, putting it in the context of the negotiation, the length of time, the number of cases. This was not the only case that was litigating over these residency issues. And it was an ultimate. Our case set the precedent now by changing the laws that were fuzzy or not there. And so it's a very important case. Let me ask you a question about the district court fees. I understand your equitable estoppel argument with respect to the OIA fees. But nothing that anybody did in this case prevented you from timely filing for district court fees, did it? Well, I would have to say on its face that's true. But in looking at the record that I can look at that shows that it's not true? Well, but that's not my argument under equitable estoppel. No, but that's what you mean. My argument is substantial justice. Okay. But let me just stop for a second here. I understand your substantial justice argument. I understand your estoppel argument with respect to OIA fees. But the rules require that you file for fees in the district court within 14 days after the judgment is entered. You didn't. The August emails occurred well after that 14-day period. I'm trying to find was there anything up until the end of those 14 days that led you to think you didn't have to file for district court fees if you were the prevailing party? Again, Your Honor, it was the ongoing conversations. And are they in the record somewhere? No, because they were verbal between me and the then counsel. And as I said, it would have been helpful to get affidavits from these people. But there aren't any. And so, you know, I'm arguing basically with myself and someone who wasn't there at the time. Well, the problem is I guess there's no affidavit from you either. But I do have an affidavit, and I did write the pleadings, and I did do it in oral arguments. I had that discussion with Judge Selna. And his response — But does the affidavit set forth the conversations that you — The conversations? No, not specifically, because they were ongoing. I mean, I don't keep that type of diary. I don't bill for those hours. I have to tell you, since this case, I keep completely different records. And I take responsibility for that. I'm not denying that. And, you know, I've been doing this as an attorney for over 15 years, as an advocate for over 20 years. I'm experienced. And, you know, one of the oral arguments in the lower court, that was used as a criticism of my abilities versus my professional ethics and integrity in trying to keep the taxpayers off this bill and working with my colleagues in a respectful way. And so I was in a position, or I am now, where I can't win. I just can't win because I relied on people I trusted that had some ethics and integrity. And as it turns out, those people were removed from the case. I'm not saying they're bad people. I believe them. I still believe them. But where are their affidavits is what the Court should be asking. They're not saying they didn't say those things to me. Mr. Garfunkel is. He wasn't privy to the conversations I had. Okay. Counsel, you're over your rebuttal time. Thank you, Your Honor. We appreciate the argument. Excuse my volume. I'm Italian. I tell everybody I'm not really angry. I'm just loud. We appreciate your arguments. Thank you. The case just argued will stand submitted. Do we have counsel on the other case now? I don't care. Either way. I'm fine. Okay. Then let's call the last case for argument today, which is Los Angeles County Office of Education v. CM. Anytime you're ready. I am. Good morning, Your Honors. I am Tanya Whiteleather. I represent the appellant defendant, Crystal Moriwaki, who is a student with a disability whom I represented in OAH and in the district court matter. May it please the Court. We are here on a matter that involved the complete denial of attorney's fees to my client for my services to her in not one but two cases.
judges: Canby, Watford, Hurwitz